The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**William Wakefield McAFEE,**
**Defendant–Appellant.**

No. 04CA1480.

Colorado Court of Appeals,
Div. I.

Jan. 25, 2007.

As Modified on Denial of Rehearing
April 12, 2007.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, William Wakefield McAfee, appeals the trial court's order denying his Crim. P. 35 motion. We affirm in part, vacate in part, and remand for resentencing.

## I.

Initially, we note that we had previously disposed of defendant's appeal here by affirming, in toto, the trial court's order, and that the supreme court denied certiorari review of that decision. *See People v. McAfee,* (Colo.App. No. 04CA1480, Mar. 16, 2006)(not published pursuant to C.A.R. 35(f))(*cert. denied* Oct. 2, 2006).

Of significance here, however, is the fact that, following the expiration of the period of time for filing a petition for rehearing in this court, but before defendant applied for certiorari review, the supreme court issued an opinion, *People v. Isaacks,* 133 P.3d 1190, 1194–95 (Colo.2006), that directly contradicted a critical premise underlying a portion of our decision in this case.

Defendant applied for certiorari review based on *Isaacks.* While defendant was awaiting the supreme court's decision whether to grant certiorari, another division of this court decided *People v. Mazzoni,* 2006 WL 2691706, —— P.3d ——, —— (Colo.App. No. 04CA0581, Sept. 21, 2006). Relying on *Isaacks,* the division in *Mazzoni* also reached a result diametrically opposed to the one reached in this case.

On October 2, 2006, the supreme court denied defendant's request for certiorari review. The next day, defendant filed with this court a motion for reconsideration of decision prior to the issuance of mandate based on *Isaacks, Mazzoni,* and the interests of justice. *See* C.A.R. 2, 27. Defendant's motion, which effectively asked us to stay the mandate until we could reconsider our earlier decision, was opposed by the prosecution.

C.A.R. 41.1, which addresses the stay or recall of mandates in some circumstances, provides:

The Supreme Court, the Court of Appeals, or a justice or judge thereof may upon just terms stay the issuance of, or recall, any mandate of the Court of Appeals until the time for seeking review by the Supreme Court expires, or if review is timely sought until it is granted or refused, or if review is granted until final disposition of the case by the Supreme Court.

In *People v. Bonilla–Garcia,* 51 P.3d 1035, 1037 (Colo.App.2001), another division of this court held that, under the language of C.A.R. 41.1, this court lacked the authority to stay or recall mandate following the denial of certiorari. For the following reasons, we decline to follow the *Bonilla–Garcia* decision.

With respect to the stay or recall of mandate following denial of certiorari, federal appellate courts operate under a rule similar to C.A.R. 41.1. Although Fed. R.App. P. 41 does not mention recall of mandate, Fed.

280

R.App. P. 41(d)(2)(D) provides, with respect to stay of mandate, that "[t] he court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed."

The federal courts have not viewed Fed. R.App. P. 41(d)(2)(D)'s directive to "immediately" issue mandate as a bar to the exercise of a court of appeals' discretion to stay or recall the mandate and provide further appellate review following denial of certiorari.

In *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir.1989), the court noted that, "[w]hile no statute or rule so provides, we have recognized a circuit court's inherent power to recall its mandate to prevent injustice or to protect the integrity of its process." Similarly, the appellate court recognized an inherent power to stay its mandate following the Supreme Court's denial of certiorari. In either instance, however, the power of an appellate court to alter its earlier judgment at this stage of the proceedings is limited to a showing of "exceptional circumstances." *Bryant v. Ford Motor Co.*, supra, 886 F.2d at 1529; *see also Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 89 (2d Cir.1996)(noting that, following the denial of certiorari review, "[the court's] power to recall a mandate is unquestioned," but that power should be exercised "sparingly" and only in "exceptional circumstances"); *First Gibraltar Bank v. Morales*, 42 F.3d 895, 898 (5th Cir.1995) ("Because the mandate is still within our control, we have the power to alter or to modify our judgment.").

■ We find these federal authorities persuasive. In *Bonilla–Garcia*, the division did not address either these authorities or the question of exceptional circumstances. And, inasmuch as we too view the power to stay or recall mandate following the denial of certiorari as an inherent power of this court, we conclude that no statute or rule authorizing such action is necessary. *Cf. In re Farrell*, 22 Colo. 461, 465, 45 P. 428, 429 (1896) (recognizing that the Court of Appeals has "inherent power" in matters relating to the exercise of its jurisdiction). Consequently, we decline to follow *Bonilla–Garcia* to the extent that a case may involve exceptional circumstances.

■ The issue here, then, is whether exceptional circumstances exist for us to stay our mandate and alter our earlier opinion. We conclude that they do.

■ "One circumstance that may justify recall"—or, as here, stay—"of a mandate is '[a] supervening change in governing law that calls into serious question the correctness of the court's judgment.'" *Sargent v. Columbia Forest Prods., Inc.*, supra, 75 F.3d at 90 (quoting *McGeshick v. Choucair*, 72 F.3d 62, 63 (7th Cir.1995)). One type of qualifying "supervening change in law" occurs when a subsequent Supreme Court decision "departs in some pivotal aspects" from the decision in the instant case. *See Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir.1988)(quoting *Am. Iron & Steel Inst. v. Envtl. Prot. Agency*, 560 F.2d 589, 596 (3d Cir.1977)).

Here, the supreme court's *Isaacks* decision directly contradicted the critical premise upon which we reached our decision in a part of the original opinion in this case.

Although the supreme court denied certiorari on the *Isaacks* issue, the denial of certiorari did not necessarily indicate approval of our prior decision. *See, e.g., Martin v. Dist. Court*, 191 Colo. 107, 109, 550 P.2d 864, 865 (1976); *see also* Robert L. Stern, Eugene Gressman, Stephen M. Shapiro & Kenneth S. Geller, *Supreme Court Practice* § 5.7, at 307 (8th ed.2002) ("there may be a multitude of reasons that motivate the ... Justices to vote to deny certiorari, many of which may have no bearing on the correctness of the lower court decision").

In our view, exceptional circumstances exist to warrant revisiting our earlier decision at this late stage of the case. Consequently, we withdraw our earlier opinion and issue this one in its stead.

II.

Pursuant to a plea agreement, defendant pleaded guilty to attempted sexual assault, a class five felony, and second degree kidnapping, a class four felony, in exchange for the dismissal of other charges against him. There were no sentencing concessions.

Prior to sentencing, defendant filed a motion to continue the hearing because he had received the presentence investigation report (PSIR) forty-eight hours prior to sentencing, not seventy-two hours as required under § 16–11–102(1)(a), C.R.S.2006. He argued that the report incorrectly stated that he had a prior felony conviction in Georgia and that he needed the time to retrieve the out-of-state records.

The trial court denied the motion and stated that it would accept defendant's representation that the conviction was not a felony conviction for purposes of the sentencing hearing. Prior to sentencing the court clarified its ruling, finding that (1) defendant had not alleged or suffered prejudice; (2) because of severe budget cuts, defendants no longer received a PSIR seventy-two hours in advance; and (3) it would be extraordinarily unfair to the victim, who had traveled from out of state, to continue the hearing. The court also found that defendant had the opportunity to present witnesses and evidence. The court then sentenced defendant to the Department of Corrections for consecutive terms of three years for attempted sexual assault and nine years for kidnapping.

Thirteen days after sentence was imposed, *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was announced. Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington, supra,* defendant filed a Crim. P. 35(a) motion on July 14, 2004. He argued that the trial court improperly imposed an aggravated sentence for the kidnapping conviction. He also claimed that the court erred in ordering the sentences to run consecutively because the offenses involved one victim and were part of the same criminal episode.

Defendant then filed a timely notice of appeal on July 26, 2004. This court granted his motion for a limited remand to allow the trial court to rule on his Crim. P. 35(a) motion.

The trial court denied the motion, finding that *Apprendi* and *Blakely* did not apply retroactively to defendant's sentence.

III.

Defendant contends that the trial court erred in finding that *Apprendi* and *Blakely* are not applicable to his sentence. We agree.

■ A new rule of constitutional procedure for the conduct of criminal proceedings applies retroactively to all criminal cases pending on direct review or not yet final. A final case means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712, 93 L.Ed.2d 649 (1987).

■ Here, the judgment of conviction was entered and sentence was imposed on June 14, 2004, after *Apprendi* was announced. Therefore, *Apprendi* is applicable to defendant's sentence. *Cf. People v. Bradbury,* 68 P.3d 494, 498 (Colo.App.2002)(*Apprendi* does not apply retroactively to collateral attacks on convictions that became final before that opinion was announced).

■ Further, defendant's notice of appeal was timely filed within forty-five days of the entry of judgment of conviction and imposition of sentence. *See* C.A.R. 4(b). Because the time for filing a notice of appeal had not expired when *Blakely* was announced, defendant's conviction was not yet final for the purpose of review under *Blakely. Cf. Edwards v. People,* 129 P.3d 977, 983 (Colo. 2006) (for the purpose of retroactive application of a new rule of law in Colorado, a judgment of conviction is not final so long as a defendant may directly appeal the conviction or sentence).

Thus, we conclude *Apprendi* and *Blakely* were applicable to defendant's sentence. Accordingly, we address the merits of his contentions.

IV.

Defendant contends that the trial court improperly imposed an aggravated sentence for second degree kidnapping because it relied on factors not admitted by him or plead-

ed and proved to a jury as required under *Apprendi* and *Blakely*. We now agree.

The presumptive sentencing range for a class four felony is two to six years. Section 18–1.3–401(1)(a)(V)(A). If the court finds the presence of extraordinary aggravating factors, it may impose an aggravated sentence up to twice the maximum of the presumptive sentencing range. Section 18–1.3–401(6).

■ Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey, supra,* 530 U.S. at 490, 120 S.Ct. at 2362–63.

■ The relevant statutory maximum for purposes of *Apprendi* is the maximum sentence the trial court may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington, supra,* 542 U.S. at 303, 124 S.Ct. at 2537 (emphasis omitted).

■ There are four types of factors that the trial court may rely upon to impose a constitutionally valid sentence: (1) facts the defendant admits; (2) facts found by a jury, as reflected in its verdict; (3) facts found by the court after the defendant has stipulated to judicial fact-finding for sentencing purposes; and (4) facts relating to prior convictions. The first three types of facts are considered "*Blakely*-compliant," and prior conviction facts are considered "*Blakely*-exempt." *Lopez v. People,* 113 P.3d 713, 723, 730 (Colo.2005).

■ Here, the trial court imposed an aggravated nine-year sentence "because of the nature of this offense, because of the injuries to the [victim], [and] because of the planning and the mechanism for predatory behavior involved by this defendant."

The facts upon which the trial court relied were not found by a jury, nor did they relate to prior convictions. Further, defendant had not stipulated to judicial factfinding for sentencing purposes. The only ground upon which an aggravated range sentence could be imposed here was facts admitted by the defendant.

In the PSIR interview, defendant had admitted punching and slapping the victim. And, at sentencing, he read a letter he had written to the victim, apologizing for "hurting [her] so badly." Thus, defendant had admitted responsibility for the victim's injuries, and, in our earlier decision in this case, we opined that that admission was sufficient to support the aggravated range sentence.

However, since our earlier decision, the supreme court has decided *People v. Isaacks, supra,* and a division of this court has decided *People v. Mazzoni, supra.*

In *Isaacks,* the supreme court held that a sentencing court may not use a defendant's factual admissions to increase a sentence unless the defendant first effectuated a knowing, voluntary, and intelligent waiver of his or her rights under *Apprendi* and *Blakely. People v. Isaacks, supra,* 133 P.3d at 1194–95.

In *Mazzoni,* the division applied *Isaacks* and, under circumstances similar to those in the present case, concluded:

Because defendant was not apprised or otherwise shown to be aware of these rights, we conclude that he did not knowingly, voluntarily, and intelligently waive his right to a jury determination regarding the nature of the victim's injuries. Consequently, [defendant's] admission would not qualify as an admitted fact that could support an aggravated sentence.

*People v. Mazzoni, supra,* 2006 WL 2691706, —— P.3d at ——.

Following *Isaacks* and *Mazzoni,* we conclude that defendant's admissions in the PSIR or elsewhere in the record would not qualify as an "admitted fact" for purposes of imposing an aggravated sentence under *Apprendi* and *Blakely.* Consequently, defendant's sentence for second degree kidnapping must be vacated, and the case must be remanded for resentencing to a term of imprisonment within the presumptive sentencing range, unless the court determines that an aggravated range sentence is warranted by the prior conviction referred to in part II of this opinion. *See People v. Elie,* 148 P.3d 359, 367 (Colo.App. 2006).

## V.

Defendant also contends that the trial court erred in ordering the sentences to run consecutively because the convictions were based on identical evidence supporting a single criminal episode involving one victim. We do not agree.

Under § 18–1–408(3), C.R.S.2006,

> When two or more offenses are charged as required by subsection (2) of this section and they are supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by subsection (2) of this section, the sentences imposed shall run concurrently; except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

The trial court has the discretion to impose concurrent or consecutive sentences when a defendant is convicted of multiple offenses unless the "evidence supports no other conclusion than that the charges are based on identical evidence." *People v. Muckle*, 107 P.3d 380, 383 (Colo.2005). Thus, the mere possibility that identical evidence may support two convictions is not sufficient to deprive the court of its discretion to impose consecutive sentences. *People v. Muckle, supra.*

Here, the statement in support of arrest, adopted as the factual basis for defendant's guilty plea, stated:

> [Defendant] approached the victim to ask about a painting in the hotel. The victim agreed to follow the [defendant] on the escalator to where the painting was. Once at the top of the escalator the [defendant] picked up the victim and threw her to the ground. The [defendant then got] on the back of the victim and told her if she made a sound he would kill her.

> The victim rolled onto her side and the [defendant] began punching the victim to her face/head. The victim stated that the [defendant] made a statement to her also saying, "I'll have you." The [defendant] continued to hit the victim about the head and she stated she was fighting back. The victim called for help and was assisted. Shortly after this the [defendant] was arrested and incident to the arrest the coat that the [defendant was wearing] was found by the escalator. In a pocket on this coat was a rubber dildo.

Defendant's assertion that there is no evidence, independent of that used to establish kidnapping, to support the attempted sexual assault conviction, is unpersuasive.

The evidence that defendant hit the victim and threatened to "have her" after throwing her to the ground also supports the substantial step required to prove attempted sexual assault. *See* § 18–2–101, C.R.S.2006 (criminal attempt); § 18–3–402(1)(a), C.R.S.2006 (elements of sexual assault). Therefore, the evidence supporting the two convictions does not lead to the inevitable conclusion that they are based on identical evidence. Thus, the court had the discretion to impose consecutive sentences, and its decision to do so was not error.

## VI.

Defendant also contends that the trial court erred in denying his motion to continue the sentencing hearing because he was not provided with the PSIR seventy-two hours prior to the hearing. Because defendant is to be resentenced for second degree kidnapping, we view the issue as moot and, thus, we decline to address it. *See In re Marriage of Hartley*, 886 P.2d 665, 669 (Colo. 1994) (an issue is moot when any judgment rendered thereon can have no practical effect upon the existing controversy).

The order is vacated with respect to defendant's sentence for second degree kidnapping, and the case is remanded to the trial court with directions to resentence defendant on the second degree kidnapping count.

Judge MÁRQUEZ and Judge ROMÁN concur.